Reginald A. HAWKINS, on behalf of himself and others similarly situated,
Plaintiff,

v.

NORTH CAROLINA DENTAL SOCIETY, an unincorporated association, and its officers, W. B. Sherrod, President, L. Franklin Bumgardner, Vice-President, Luther Butler, President-elect, and S. B. Towler, Secretary-Treasurer,

Second District Dental Society, Component of the North Carolina Dental Society, an unincorporated association and its officers, William F. Yelton, President, James A. Harrell, President-elect, Fleming H. Stone, Vice-President, O. J. Freund, Editor, and James E. Graham, Secretary-Treasurer, Defendants.

Civ. A. No. 1505.

United States District Court
W. D. North Carolina,
Charlotte Division.

June 19, 1964.

T. H. Wyche, Charlotte, N. C., Conrad O. Pearson, Durham, N. C., Frank H. Heffron, Jack Greenberg and Jack Nabritt, III, New York City, for plaintiff.

Joyner & Howison, Raleigh, N. C., for defendants.

WARLICK, District Judge.

In this action, plaintiff, a Negro citizen, suing on behalf of himself and other Negro dentists similarly situated, seeks injunctive relief alleging that the defendants have discriminated against him because of his race in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution. The relief sought in plaintiff's prayer is an injunction forever restraining defendants from excluding plaintiff and all others similarly situated from full and equal participation in defendant societies' membership because of race. In Section III of his complaint, however, plaintiff states that his is an action to restrain the defendant societies and their officers from refusing to admit him to membership.

This cause came on to be heard and was heard by the undersigned Judge of the United States District Court for the Western District of North Carolina at Charlotte.

Prior to the trial and upon motion of counsel for defendants and over the objection of counsel for plaintiff a jury was drawn and at the hearing was selected by counsel for all parties and empaneled by the Court, in order that it might be available and ready if, in the discretion of the Court, it was desired to submit to the jury any issue of fact for an advisory verdict.

Following the presentation of evidence by plaintiff, the defendants offering no evidence, and after motions under Rule 41(b) had been made, the Court determined, without objection, that the matters involved were matters of equity and were of a non-jury nature and that the Court need not request any advisory verdict from the jury pursuant to Rule 39 (c), Federal Rules. The Court then discharged the jury, by consent, and announced that the Court would await the transcript of the evidence and would make a decision after receipt and study of the transcripts and briefs, requesting counsel to submit proposed findings of fact and conclusions of law in the time allowed.

The record, including pleadings, evidence and exhibits, has been carefully considered and a full study of the proposed findings and conclusions has been made. All of the evidence in the case was directed to two questions or issues. These are in substance:

1. Is the State of North Carolina in any of its manifestations so involved in the conduct of the North Carolina Dental Society or of the Second District Dental Society that the activities of these societies are also the activities of the State of North Carolina and performed under its protection, and whether or not either society is the instrumentality or the agent of the State in a strict sense? In other words, to any significant extent, is the State of North Carolina in any of its

manifestations involved in the action of either of these two societies so that their actions are "State actions" within the meaning of the Fourteenth and Fifteenth Amendments to the United States Constitution?

2. If so, has the North Carolina Dental Society or the Second District Dental Society discriminated against the plaintiff or other duly licensed Negro dentists because of race or color?

Pursuant to Rule 52 of the Federal Rules of Civil Procedure the following Findings of Fact and Conclusions of Law are made?

### FINDINGS OF FACT

Plaintiff, Reginald A. Hawkins, a Negro, is a dentist duly licensed to practice dentistry in the State of North Carolina and is engaged in such practice in the City of Charlotte, North Carolina.

Considering first the issue of "State Action" I find that:

The North Carolina Dental Society is a voluntary association of dentists of which the Second District Dental Society is a constituent part. Membership in the Second District Dental Society automatically constitutes membership in the North Carolina Dental Society. Society members are those who voluntarily seek to join and whom the Society accepts for membership in accordance with its charter and by-laws. For convenience hereafter the North Carolina Dental Society will be referred to as "The Society" and the Second District Dental Society as "The District".

The objects and purposes of the Societies are stated in their constitution as:

"The object of this Society shall be to cultivate the art and science of dentistry and its collateral branches; to elevate and sustain the professional character of dentists; and to promote among them mutual improvements and harmonious relations."

The actions and activities of the Society and the District are consistent with these stated objects and purposes.

At the time this cause was heard there were 1,529 licensed dentists in North Carolina. The membership of the Society at that time was 1,214. The evidence fails to disclose how many of these 1,214 members of the Society are licensed dentists and the constitution of the Society only requires that active members as distinguished from Life, Honorary and Retired members be currently licensed dentists. For its purposes, however, I have assumed that substantially all of these Society members are currently licensed dentists.

Under the existing North Carolina laws any dentist, licensed in North Carolina for at least nine years, engaged in the practice of dentistry is eligible for election to membership on the North Carolina State Board of Dental Examiners, an agency of the State of North Carolina, and each licensed dentist is authorized to participate fully with every other licensed dentist in the nomination and election of the members of the North Carolina State Board of Dental Examiners. The North Carolina statute does not grant or give to the North Carolina Dental Society or to the Second District Dental Society any authority whatever with respect to the nomination of election or the conduct of any members of the State Board of Dental Examiners.

No evidence was offered that the North Carolina Dental Society or the Second District Dental Society is exercising or attempting to exercise or threatens to exercise any control or authority over the nomination, election or conduct of any member of the North Carolina Board of Dental Examiners. The plaintiff and any other dentist who is not a member of the Society, whether he be Negro or white, has the same right as do members of the Society to serve on the Board of Dental Examiners and to participate in the nomination and election of its members. It is found as a fact that the defendants are not clothed with and do not exercise any State power over the nomination, election, or conduct of the members of the North Carolina Board of Dental Examiners.

Under the present North Carolina laws the dental member of the North Carolina Medical Care Commission and the dental member of the North Carolina Mental Health Council are appointed by the Governor of North Carolina in his discretion from the field of all licensed dentists in North Carolina. Neither membership in the North Carolina Dental Society nor in any constituent district society is necessary for the making of such appointment. While the law requires the Governor to request recommendations from the President of the Society, the President has no duty to make such recommendations nor need the Governor appoint any dentist so recommended. The Governor may request recommendations from any source and any one, including plaintiff, may make recommendations to him. It is found as a fact that the North Carolina Dental Society and the Second District Dental Society do not exercise any State power or function in connection with the appointment or the conduct of any member of the North Carolina Medical Care Commission, a State agency, or of the North Carolina Mental Health Council.

The Society has a committee known as the "Hospital Service Committee" which as a voluntary service to the American Dental Association from time to time at the request of that association inspects hospitals to determine whether or not, in the opinion of the Committee, the hospital facilities are suitable for the teaching and training of dentists. The Committee makes recommendations of approval or disapproval accordingly to the American Dental Association. No evidence was offered that the American Dental Association has any control over or legal right to exert control over the use of the facilities of any hospital, public or private, for the teaching or training of dentists.

The Society has a committee known as the "Advisory Council to the University of North Carolina School of Dentistry" the function of which committee is to raise funds to create a scientific foundation for research and study in dentistry at or connected with that dental school. The Society does not have any control over the foundation. Here again no evidence was offered that the Society or its Committee is required to engage in this fund raising project or that the foundation or the University of North Carolina is required to accept any funds raised if, for any reason, they should not desire to do so.

The North Carolina Industrial Commission and the North Carolina School Health Coordinating Service are instrumentalities of the State of North Carolina. When requested by either of these agencies the Society makes recommendations to them as to a suitable fee schedule for dental services rendered by dentists under the programs of those agencies. No evidence was introduced that these agencies are required either to request or to adopt these recommendations or that the Society is required to make them. The record contains no evidence that these agencies do in fact adopt the recommendations when they are made.

The Society has a committee known as the "State Institutions Committee". When a State mental institution or hospital requests it to do so, this Committee will make an examination of the dental facilities of the institution and will advise it as to the condition of the facility together with any suggestions which the Committee may have for maintaining competent dental care for the patients in the institution. There is no evidence that any institution is required to seek such assistance or that the Society is required to give it or that the institution is required to act upon the advice and suggestions which it receives.

There is further no evidence in the record that the North Carolina Dental Society or the Second District Dental Society is currently exercising or proposes to or threatens to exercise any State, Federal or local government power or function or privilege. It is found as a fact that the acts of the defendants now being performed or proposed with respect to the State of North Carolina, its agencies or instrumentalities, or the

Federal Government, its agencies or instrumentalities, or any other governmental agency or instrumentality are recommendatory only in their nature and effect, are not binding on the public or semi-public body to which made, are voluntarily made at the voluntary request of the body and are a public service of a professional nature; that the defendants are not in any way now authorized to exercise or exercising or threatening to exercise, any State, or Federal function or power.

Following the findings above as to "State Action" arising in the first issue, I now come to and consider the second issue, that of "Racial Discrimination".

The defendant societies are voluntary associations composed of members who voluntarily seek to join them and who may be voluntarily accepted for membership according to the charter and by-laws voluntarily adopted by the Societies. Membership in neither society is required as a prerequisite to receiving a license to practice dentistry in North Carolina.

The charter and by-laws of the defendant North Carolina Dental Society requires that in order to be an active member of that Society a person be licensed to practice dentistry in North Carolina and that he be a member of one of the five district societies which are constituents of the State society. When a dentist becomes a member of one of the five constituent societies he is automatically a member of the State society. The defendant Second District Dental Society requires, as does each of the other four district societies, that a person in order to become an active member of that district society must

(a) Be licensed to practice dentistry in North Carolina;

(b) Execute a formal prescribed membership application;

(c) Secure on that application the written endorsement of two dentists who are active members of the district society;

(d) Then secure the acceptance of the application by the executive committee of that society;

(e) Then secure the acceptance of the application by the members of the district society in a formal meeting of members.

There is nothing in the constitution or the by-laws of either dental society which is racially discriminatory.

Application blanks for membership have been freely furnished to any licensed dentist requesting same, regardless of his race.

The evidence shows, and I find that there is no Negro member of either defendant society; that no Negro dentist at the time this case was heard has had an endorsed application presented and acted on by a district executive committee.

The plaintiff has never met the membership requirement of the Second District Dental Society that his application bear the endorsement of two members of that district society. The plaintiff sought endorsement from two such members and each declined to endorse.

Each of three other Negro dentists sought endorsement to their applications for membership from two members of a district society. Each request for endorsement was declined.

One application by a Negro dentist recently has been endorsed favorably by two members of the Second District Dental Society and was, at the close of the testimony in the process of being presented to the Executive Committee of the Second District Dental Society at its next meeting. What came of it I have not learned.

There is no competent evidence that any member of the defendant societies who refused to endorse plaintiff or any other Negro applicant for membership did so because of his race or color. Although the record shows that at least one of those who refused to endorse plaintiff's application was in the courtroom, plaintiff failed to call him as a witness.

There is no North Carolina Dental Society or Second District Dental Society racially discriminatory policy or action with respect to the admission of plaintiff.

## CONCLUSIONS OF LAW

 The determinations of fact and conclusions of law applicable to the plaintiff's request for a mandatory injunction are to be made from the facts and the law as they are at the present, that is at the closing of the evidence in the case (Tennessee Negro Funeral Directors Association v. Board of Funeral Directors and Embalmers of State of Tennessee et al., 206 Tenn. 141, 332 S.W.2d 195).

 An individual is free to choose his associates and a voluntary private association of individuals is free to choose its members. A court will not and cannot compel admission of an individual into a voluntary association, membership being a privilege and not a right. This is true no matter what may be the reason or the motive for the denial of membership. (89 A.L.R.2d Note beginning page 965 (1963).)

 Acts of an individual or of a private association of individuals, even though they infringe upon some right of another individual are not violative of the Fourteenth or Fifteenth Amendments to the Constitution of the United States unless they are done in the exercise of some state power. "[P]rivate conduct abridging individual rights does no violence to the Equal Protection Clause unless to some significant extent the State in any of its manifestations has been found to have become involved in it." Peterson v. Greenville, 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323.

Neither of the defendant societies has the right to exercise any state or federal power or function in connection with the North Carolina Board of Dental Examiners, the North Carolina Medical Care Commission, the North Carolina Mental Health Council or any other agencies or instrumentalities of the State or federal governments.

It is true and obviously well known that the State or federal government, or both, may become so involved in the conduct of otherwise private voluntary associations that their activities are also the activities of these governments and performed under their aegis so that these voluntary associations or private parties may be engaged in "State action" within the meaning of racial discrimination prohibitions contained in the Fourteenth and Fifteenth Amendments to the United States Constitution even though the otherwise private parties are neither the instrumentality nor the agent of the government in a strict sense (Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959, CA 4th, 1963).

In the above cited case Chief Judge Sobeloff goes fully into the matter and relation of "State action" and basically sets out the governing yardstick to the "Equal Protection Clause." "Individual invasion of individual rights is not the subject-matter of the amendment," The Civil Rights Cases, 109 U.S. 3, at p. 11, 3 S.Ct. 18, 21, at p. 21, 27 L.Ed. 835. Surely no such significant extent of involvement is shown in the facts in this case.

Plaintiff in his brief has cited seventeen (17) cases covering a wide range of facts and law, however in my opinion none of the cases cited seem to be even nearly in point. In each case cited by plaintiff which involves racial discrimination and constitutional rights there has been some actual direct exercise of some state function or the use of some state property or funds or the organizing and functioning of a political party. It would appear hardly necessary to set out here the seventeen citations in plaintiff's brief.

Plaintiff seemingly places great reliance on a decision made by Judge Frank A. Hooper of the United States District Court for the Northern District of Georgia, Atlanta Division, handed down on the 3rd of February of this year, in which for all practical purposes it appears that the Georgia Dental Associa-

tion was to say the least, a state organization and which clearly brings that decision into the embrace of State action, for that it appeared that the various Georgia statutes gave to the Governor positive authority to appoint only from a list of nominees submitted by the medical, dental and pharmaceutical associations and that such appointments were to be confirmed by the Senate, indicating full State action. Among other things, Judge Hooper said this: "There seems to be no doubt that the right to name officials of the State of Georgia is State action." It is not at all difficult to differentiate that case from the case under decision. Bell and others v. Georgia Dental Association, the Northern District Dental Association, et al., 231 F.Supp. 299.

■ It is in the public interest that private citizens or groups or associations of private citizens express their suggestions and recommendations to governments and governmental agencies for the conduct of governmental affairs. Especially is this true where the suggestions and recommendations are made by members of a business or profession requiring specialized knowledge to a governmental agency acting in that specialized field. The volunteering of suggestions or recommendations to a governmental agency or official where the private citizen or group making the recommendation has no legal obligation or duty to do so and the governmental agency or official has no legal obligation or duty to act favorably on such suggestion or recommendation is not "State action" on the part of the volunteering citizen or group.

■ On the facts found in this case neither the State nor federal government is so involved in the conduct of either of defendant societies that their activities, or the activities of either of them, or the activities of these governments and performed under their aegis to such extent that either society can be said to be engaged in "State action" within the mean-

ing of the racial discrimination prohibitions of the Fourteenth and Fifteenth Amendments to the Constitution of the United States.

Further on the facts herein neither defendant presently is exercising any state or federal power, or is authorized to exercise any state or federal power. Neither defendant in this case is engaged in doing anything except as private conduct and neither defendant in this case is engaged in or is threatening to engage in any conduct abridging the rights of plaintiff or any conduct which does violence to the Fourteenth or Fifteenth Amendments to the Constitution of the United States.

I find from the facts in this case that neither plaintiff nor those similarly situated can claim a right to membership in either of the defendant dental societies, admission to membership being a privilege which the defendants may grant or which they may refuse to grant for any reason whatever or without any alleged or ascertainable reason.

■ And that even in the event that defendants or either of them may have been exercising any state or federal power, or otherwise been engaged in "State action", plaintiff is not entitled to a mandatory injunction requiring membership in defendant societies, because plaintiff has failed to prove that his inability to obtain membership is due to any racially discriminatory act or policy of either defendant.

On May 22, 1964 parties hereto entered into a stipulation for substitution of parties defendant, intending thereby to make defendants the newly elected officers of the defendant Society and District, all to the end that the decision of the court would be effective as against the defendants at the time such decision was made. The order for substitution of parties as originally stipulated was signed by Chief Judge J. B. Craven, Jr., of the Western District of North Carolina and accordingly was filed in the cause.

In view of the facts found and the conclusions of law made, I am of the opinion that the plaintiff is not entitled to the relief he seeks and accordingly his action is dismissed.

Counsel will submit decree.