Faye B. JOHNSON, Plaintiff,

v.

OLIN CORPORATION, Defendant.

Civ. A. No. H–77–280.

United States District Court,
S. D. Texas,
Houston Division.

Feb. 14, 1980.

Craig A. Washington, Houston, Tex., for plaintiff.

Ian Spier, Stamford, Conn., Coyt Randal Johnston, Baker & Botts, Houston, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

McDONALD, District Judge.

This is an employment discrimination action filed by a black female who was terminated by the defendant Olin Corporation. This action was filed pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (hereinafter "Title VII") and 42 U.S.C. § 1981.

The plaintiff was terminated by the defendant on April 9, 1976. Thereafter, on April 13, 1976, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission against the defendant and the Commission issued its Notice of Right to Sue on November 22, 1976. The complaint was filed within ninety (90) days of receipt of that Notice of Right to Sue on February 18, 1977. The Court has jurisdiction over the subject matter and the parties to this action under both Title VII and 42 U.S.C. § 1981 insofar as plaintiff's complaint of racial discrimination is concerned. The defendant is an employer within the meaning of those statutes. Section 703(a) of Title VII makes it unlawful for an employer to discharge an individual because of such individual's race and such action on the part of an employer is unlawful under 42 U.S.C. § 1981.

Although this case was originally filed as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure, the class action aspects of the case were dismissed by common agreement and the case proceeded to trial on an individual basis. *See,* Order of November 2, 1978 (per Bue, J.). After careful review of all of the evidence adduced, observing the demeanor of the witnesses who testified and assessing the credibility of such witnesses, the Court finds that the plaintiff has established that she

was terminated by the defendant because of her race in violation of Title VII and 42 U.S.C. § 1981. The Court finds that her sex was not a factor in the defendant's decision to terminate her employment.

Plaintiff first made application for employment with the defendant on September 27, 1975. As of that date, no black females had been employed in either the office or the plant. Plaintiff was not hired at the time of her initial application, but was subsequently employed on February 11, 1976, as a laborer in the Maintenance Department and assigned to the Shipping and Receiving Department as a Dock Helper. She worked in that capacity until March 11, 1976, when she requested to be assigned to the Labor Department because of the difficulty that she encountered in opening box car doors in the Shipping Department. Upon that assignment, plaintiff became the first black woman and one of only two women working in the Labor Department. Plaintiff worked in the Labor Department until April 9, 1976, when she was discharged. Plaintiff's supervisor in the Shipping and Receiving Department, Mr. W. Dean Jackson, a caucasian, under whom she worked for the first thirty (30) days of her sixty (60) day probationary period, considered her to be an "average" worker and would not have recommended her termination. However, her supervisor in the Labor Department, Mr. W. D. Davis, a caucasian, recommended her termination on the grounds that her performance was unsatisfactory.

The evaluation of the plaintiff's performance in the Labor Department by Mr. Davis, however, contrasts sharply with the testimony of other witnesses whom the Court considers to be more credible. Mr. Davis testified that on March 2, 1976, the plaintiff worked with Mr. Emmitt Houston as a Helper on the flatbed truck and that Mr. Houston had complained about the plaintiff's performance and requested another Helper. Mr. Houston, however, testified that he had never made such comments to Mr. Davis and that, to the contrary, the plaintiff had worked well with him on several occasions. Similarly, contrary to Mr. Davis' testimony that on March 30, 31, and April 1, 1976, the plaintiff's work on the truck scales had been unsatisfactory, Mr. Winston Gonzales testified that he worked with the plaintiff on those occasions and that she was doing her share of the work.

Significantly, repeated testimony was received commending the plaintiff's work performance and comparing it favorably with that of Ms. Josephine Garcia, a nonblack and the only other female in the department who was retained on the recommendation of Mr. Davis. Mr. Kelly Gordon, for example, a truck driver, testified that he had observed both the plaintiff and Ms. Garcia working and had worked with both of them on the flatbed truck and testified that the quality of their performances was the same, i. e., both were satisfactory. Indeed, Ms. Garcia herself testified that she had worked with the plaintiff frequently and found their work performances to be comparable. The only area in which Mr. Davis rated their performances similarly was in attendance. However, subsequent testimony revealed that Ms. Garcia was absent one week and a day during her probationary period, while the plaintiff, on the other hand, was not absent at all.

Mr. Davis testified that he had received several complaints about plaintiff's unwillingness to work and that he spoke with the plaintiff about her performance, citing as an example, her use of a shovel. The plaintiff contends, however, that Mr. Davis spoke with her only once about her job performance shortly before the completion of her probation and then only in response to the plaintiff's request for an evaluation of work. Mr. Davis merely responded that she had to do better. Mr. Felton Milton, however, testified that he had observed the plaintiff working with a shovel and concluded that she was doing the same amount of work as the other employees in the department.

Mr. Davis testified that a caucasian supervisor Mr. C. F. Durham, had advised him that the plaintiff "just stands back and lets the others do the work." Mr. Durham testi-

fied that this "report" was related to one occasion when the plaintiff was working with Mr. Gonzales. That appraisal of her work, however, was made on the basis of a brief passing of the job site and he admitted that Mr. Gonzales had not complained about the plaintiff's work. Moreover, on cross examination, he stated that one of plaintiff's fellow employees had spoken favorably about the plaintiff's performance in the Labor Department, but that this commendation was not reported by him to Mr. Davis. Testimony about Mr. Durham's negative response to efforts of black employees to end job segregation at defendant's plant, coupled with his failure to pass on the favorable report regarding plaintiff convinces the Court that little weight should be given to Mr. Durham's testimony. Further, the Court finds it difficult to believe that even Mr. Davis credited such a scanty report without conducting further inquiry.

The Court is thus left with two different portraits of the plaintiff. The first, painted by Mr. Davis, is that the plaintiff was unwilling to work and that he recommended her termination for that reason. The other picture, portrayed by the plaintiff and her fellow employees, is that plaintiff is a good worker whose performance was as satisfactory as that of Ms. Garcia. Was the plaintiff's performance in the Labor Department unsatisfactory or did Mr. Davis recommend her termination because of her race? The defendant argues that the issue is whether or not the defendant (i. e., Mr. Davis) truly believed that the plaintiff was not performing satisfactorily. According to the defendant, if Mr. Davis truly believed that the plaintiff was performing unsatisfactorily, then even if he was wrong, action taken based on his belief would not constitute racial discrimination. *See, Turner v. Texas Instruments, Inc.*, 555 F.2d 1251 (5th Cir. 1977). In resolving such grossly conflicting versions of the plaintiff's performance and testing the "belief" of Mr. Davis, the obvious determining factor is the credibility of the witnesses.

The trial of this case consumed several days and this Court had substantial opportunity to observe the demeanor of the witnesses. Considerable testimony was offered during the several days of trial that goes to the precise issue of the credibility of Mr. Davis, and upon a review of that testimony the Court concludes that Mr. Davis used his evaluation of plaintiff's work performance as a pretext to effectuate his racially discriminatory attitudes.

Mr. Davis testified that he was not aware of the plaintiff's performance in the Shipping and Receiving Department when she was transferred to the Labor Department. Plaintiff testified that on the day that she was transferred to the Labor Department she met with Mr. Pisley, a supervisor of the defendant, and Mr. Davis and discussed her prior performance in the Shipping and Receiving Department. Mr. Gonzales also testified that before the plaintiff was transferred to the Labor Department he heard a company official advise Mr. Davis that the plaintiff was being transferred because she "could not handle the work at the dock." Mr. Gonzales heard Mr. Davis respond to this company official that if the plaintiff could not handle the work in the Labor Department then "he would let her go and that if she upset him he would assign her to the 'nasty' jobs." Mr. Pisley was not called by the defendant.

■ Further, credible evidence was presented regarding Mr. Davis' racial antagonism against blacks. Mr. Davis was a vice-president in the labor organization representing employees of the defendant before he became a supervisor. During that period, a Biracial Committee was organized to integrate the jobs and facilities at the defendant's plant. Two witnesses testified that Mr. Davis had opposed this integration and had stated during the meeting that if the "coloreds didn't like it they could go west" and that blacks "didn't have any business with white men's jobs."[1] Acts

---

1. Even witnesses called by the defendant, on cross examination admitted that they were

aware that Mr. Davis had a reputation for being racially prejudiced. Although there were

taken before the effective date of Title VII (July 2, 1965) are relevant for the purpose of showing an intent manifested since that date to discriminate against blacks. *See, Local 189, United Papermakers & Paperworkers v. United States,* 416 F.2d 980 (5th Cir. 1969), *cert. denied,* 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970). This testimony may establish that Mr. Davis "was predisposed to discriminate against blacks" within the meaning of *Taylor v. Safeway Stores, Inc.,* 365 F.Supp. 468 (D.Colo.1973), *aff'd,* 524 F.2d 263 (10th Cir. 1975). *See also Lowery v. Whitaker Cable Corp.,* 348 F.Supp. 202, 215 (W.D.Mo.1972), *aff'd,* 472 F.2d 1210 (8th Cir. 1973). More importantly, however, Mr. Davis denied making these statements attributed to him by corroborated testimony and therefore these statements reflect his lack of credibility.

There were other inconsistencies in Mr. Davis' testimony. Mr. Davis first testified that on April 7 or 8, 1976, he spoke with the Industrial Relations supervisor about his recommendation that the plaintiff be terminated and that the Industrial Relations supervisor made a note of his complaint. Later in his testimony Mr. Davis testified that he had given the Industrial Relations supervisor a handwritten letter regarding the plaintiff's deficiencies. Further, Mr. Davis denied that he was opposed to women working in the Labor Department. However, Mr. Adell Jones testified that Mr. Davis had spoken with him and said that women shouldn't be doing "men's work", referring to the jobs in the Labor Department.

The effect of the lack of credibility of the recommending supervisor is compounded because of this defendant's subjective method of assessing a new employee's performance. One purpose of requiring the use of objective, measurable standards is to guard against the injection of racial bias in employment decisions. A supervisor with a demonstrated propensity to discriminate against minorities is thus free to act out those prejudices without check by upper management. Here, the defendant relied

on fellow employees to train new employees in the Labor Department, yet plaintiff's supervisor failed to secure any significant input from those employees regarding the performance of the plaintiff. Plaintiff's supervisor received no written or oral instructions from upper management as to the factors to be used to determine the quality of an employee's performance. Plaintiff's former supervisor used one set of criteria and characterized her as an "average worker", yet, her supervisor in the Labor Department, W. D. Davis, applied different factors and found her to be unsatisfactory. Significantly, Olin Corporation routinely followed the recommendations of its supervisors. At the time plaintiff was assigned to the Labor Department none of the supervisors was black. Such a "system" of evaluating employees has been declared to be in violation of Title VII.

> All we do today is recognize that promotion/transfer procedures which depend almost entirely upon the subjective evaluation and favorable recommendation of the immediate foreman are a ready mechanism for discrimination against Blacks much of which can be covertly concealed and, for that matter, not really known to management. We and others have expressed a skepticism that Black persons dependent directly on decisive recommendations from Whites can expect non-discriminatory action. See, *Hawkins v. North Carolina Dental Society,* 4 Cir. 1966, 355 F.2d 718, 723–24; *Cypress v. Newport News General and Nonsectarian Hosp. Assn.,* 4 Cir. 1967, 375 F.2d 648, 655; *Meredith v. Fair,* 5 Cir. 1962, 298 F.2d 696, 702, *cert. denied,* 1962, 371 U.S. 828, 83 S.Ct. 49, 9 L.Ed.2d 66.

*Rowe v. General Motors Corp.,* 457 F.2d 348, 359 (5th Cir. 1972).

This Court finds that the plaintiff has met the burden of proof requirement enunciated by the United States Supreme Court in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which although a hiring

---

seemingly ten persons on the Biracial Committee, the defendant failed to call any witness

who attested to Mr. Davis' version of his position.

case has been applied to employment terminations as well. The plaintiff having established a *prima facie* case of discrimination, the defendant must then "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp., supra*, at 802, 93 S.Ct. at 1824. It is clear that defendant's burden to "articulate" is not satisfied by a mere allegation. As the Supreme Court indicated in *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978), "articulate" is used interchangeably with "prove." *See, also Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978).[2] The United States Court of Appeals for the Fifth Circuit has unequivocally decided the quantum of proof required of the defendant in stating that, "the employer bears the burden of proving the legitimate, nondiscriminatory reasons for his actions by a preponderance of the evidence." *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251, 1255 (5th Cir. 1977); *Adams v. Reed*, 567 F.2d 1283, 1285 (5th Cir. 1978). *But see, Sweeney v. Board of Trustees of Keene State College*, 604 F.2d 106 (1st Cir. 1979).

In an attempt to discharge its burden, the defendant seemingly takes two positions. The first is that it "believed" the plaintiff was performing unsatisfactorily and even if wrong, its actions in reliance on that belief does not constitute a violation of Title VII or 42 U.S.C. § 1981, citing *Turner, supra*. This Court does not take issue with the defendant's argument, in the abstract. However, in this case the credibility of the recommending supervisor has been put in issue and the asserted belief upon which the defendant seeks to rely to insulate itself from liability is no better than the supervisor's credibility. The Court finds his credibility lacking.

Second, the defendant contends it has met its burden of proving a legitimate non-discriminatory reason for terminating the plaintiff. The Court finds that the defendant has failed to prove that its discharge of the plaintiff was for legitimate, nonracial reasons and thus, failed to overcome plaintiff's *prima facie* case. Certainly, unsatisfactory job performance is a legitimate reason for termination. However, as the Court has previously detailed, a weighing of the testimony, an observation of the demeanor of the witnesses testifying and an assessment of their credibility leads to the inescapable conclusion that plaintiff's job performance was not unsatisfactory and that she was discharged because of her race. The consequences of the defendant's failure to effectively rebut plaintiff's *prima facie* case were spelled out by Justice Rehnquist, the author of *Furnco, supra*, 98 S.Ct. at 2950:

> [W]e are willing to presume this [inference of discrimination from the *McDonnell Douglas* factors] largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, whom we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race.

The foregoing findings clearly demonstrate that the actions of the defendant taken by and through the plaintiff's supervisor who recommended the termination not only violate Title VII, but also constitute purposeful racial discrimination in violation of 42 U.S.C. § 1981. Mr. Davis' recommendation to terminate the plaintiff, avowedly because of her performance but actually because of his racial antagonism against the plaintiff, was made with the intent to discriminate as prohibited under § 1981. *See*

2. The Court, of course, is not requiring the defendant to prove "the absence of discriminatory motive," for the Supreme Court has explicitly rejected this characterization of the defendant's burden in *Sweeney, supra*, 99 S.Ct. at

295. Instead the defendant is being held to the burden of proving a legitimate, nondiscriminatory reason for the termination after plaintiff established its *prima facie* case.

*Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), *Williams v. DeKalb County*, 582 F.2d 2 (5th Cir. 1978).

Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED that judgment be awarded for the plaintiff and that plaintiff is entitled to be paid by the defendant all back pay lost as a result of her unlawful discharge with interest thereon, together with reasonable attorney's fees and costs.